UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| STEVEN WILTZ | CIVIL ACTION NO. 6:13-cv-2644 |
| VS. | SECTION P |
| | JUDGE RICHARD T. HAIK, SR. |
| SHERIFF MIKE NEUSTROM, ET AL. | MAGISTRATE JUDGE PATRICK J. HANNA |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Steven Wiltz, proceeding *in forma pauperis*, filed the instant civil rights action pursuant to 42 U.S.C. §1983 on September 10, 2013. Plaintiff sues Lafayette Parish Sheriff Mike Neustrom, Dr. Renee Bonin, and their insurers seeking money damages for injuries he sustained while incarcerated at the Lafayette Parish Corrections Center (LPCC) in May, 2013 as a result of the defendants' medical malpractice. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Statement of the Case*

Plaintiff was incarcerated at the LPCC in May 2013. According to plaintiff, he "was medically damaged by the staff of Sheriff Mike Neustrom. The injuries that were suffered was a result of negligence due to the side effects of the sudden change in his existing medication, causing irrepairable (sic) side effects." According to his prisoner grievances, Dr. Bonin

prescribed Abilify® instead of Seroquel® which resulted in some unspecified injury.[1]  According to plaintiff these damages he suffered due to the side effects of medication were the result of a "misdiagnosis" by LPCC's health care provider, Dr. Bonin.  Plaintiff prayed for $2,000,000 in damages for injuries and suffering.

## Law and Analysis

Plaintiff has been permitted to proceed *in forma pauperis* (IFP) pursuant to 28 U.S.C. § 1915.  This complaint is therefore subject to the screening provisions of 28 U.S.C. § 1915(e)(2)(B), which imposes a screening responsibility on the district court when the plaintiff has been granted IFP status. The statute provides in relevant parts a follows:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... (B) the action or appeal--(i) is frivolous or

---

[1] Abilify® or aripiprazole is used to treat the symptoms of schizophrenia (a mental illness that causes disturbed or unusual thinking, loss of interest in life, and strong or inappropriate emotions) in adults and teenagers 13 years of age and older. It is also used alone or with other medications to treat episodes of mania or mixed episodes (symptoms of mania and depression that happen together) in adults, teenagers, and children 10 years of age and older with bipolar disorder (manic-depressive disorder; a disease that causes episodes of depression, episodes of mania, and other abnormal moods). Aripiprazole is also used with an antidepressant to treat depression when symptoms cannot be controlled by the antidepressant alone. Aripiprazole is in a class of medications called atypical antipsychotics. It works by changing the activity of certain natural substances in the brain.

Seroquel® or quetiapine is also used to treat the symptoms of schizophrenia. Quetiapine tablets and extended-release tablets are also used alone or with other medications to treat episodes of mania (frenzied, abnormally excited or irritated mood) or depression in patients with bipolar disorder. In addition, quetiapine tablets and extended-release tablets are used with other medications to prevent episodes of mania or depression in patients with bipolar disorder. Quetiapine extended-release tablets are also used along with other medications to treat depression. Quetiapine is in a class of medications called atypical antipsychotics. It works by changing the activity of certain natural substances in the brain. Medline Plus, A service of the U.S. National Library of Medicine and National Institutes of Health. See Medline Plus, Drugs & Supplements, http://www.nlm.nih.gov/medlineplus/druginformation.html

> malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Section 1915(e)(2)(B) applies equally to prisoner as well as nonprisoner *in forma pauperis* cases. See *Newsome v. Equal Employment Opportunity Commission*, 301 F.3d 227, 231-33 (5th Cir.2002) (affirming dismissal of nonprisoner claims for frivolity and failure to state a claim under § 1915(e)(2)(B)(i) and (ii)); *Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205-206 (2nd Cir.2002) (affirming dismissal of *in forma pauperis* non-prisoner case for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)); see also *Benson v. O'Brian*, 179 F.3d 1014, (6th Cir.1999) (complaints in actions not pursued *in forma pauperis* are not subject to "screening" under § 1915(e)(2)); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir.1998) (same).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

However, in order to benefit from this assumption of truthfulness, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* 596 U.S. 662,  129 S.Ct. 1937, 1949,  173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97

(5th Cir. 1994).

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

*2. Medical Care*

It is unclear whether plaintiff was a pre-trial detainee or a convicted inmate when the complained of incident occurred. Because they are presumed innocent, pre-trial detainees have a constitutional right to be free from punishment. Under the due process clause of the Fourteenth Amendment, detainees have a constitutional right to safe conditions of confinement and adequate medical care. Convicts, on the other hand, are guaranteed safe conditions and adequate medical care pursuant to the Eighth Amendment's prohibition of cruel and unusual punishment. *See Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir.2000) ("Unlike convicted prisoners, whose rights to constitutional essentials like medical care and safety are guaranteed by the Eight[h] Amendment, pretrial detainees look to the procedural and substantive due process guarantees of the Fourteenth Amendment to ensure provision of these same basic needs." (citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

With regard to medical care claims, both detainees and convicts, in order to establish a Constitutional violation, must establish that the offending state officials acted with deliberate indifference to their serious medical needs. Thus, whether the case arises under the Fourteenth Amendment or the Eight Amendment, the deliberate indifference standard must be employed. In either case, deliberate indifference means that: (1) the prison officials were aware of facts from

which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458–59. Thus, "... the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999)

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir.2001). "[T]he plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (internal quotation marks and citation omitted). "[M]ere negligence, neglect, or medical malpractice" do not constitute deliberate indifference. *Varnado v. Lynaugh*, 920 F.2d 320 at 321 (5th Cir. 1991). Even "gross negligence" does not establish deliberate indifference. *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d 872, 882 (5th Cir .2004).

Unsuccessful medical treatment, acts of negligence, or even medical malpractice do not constitute deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Indeed, disagreement with medical diagnosis or treatment does not constitute deliberate indifference. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201

(5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985). Diagnosis and treatment decisions are a classic example of a matter best left to the medical judgment of health care professionals. *Gobert*, 463 F.3d at 346.

Here, plaintiff merely disagrees with the treatment choices of the medical professionals who cared for him during his incarceration. He characterizes the fault of the defendants as "negligence" and "misdiagnosis." He clearly has failed to state a claim for which relief may be granted and his complaint should be dismissed accordingly.

*Conclusion and Recommendation*

Therefore

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. ys from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

*See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Lafayette, Louisiana September 25, 2013.

_____
**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**